IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| GENE J. WALKER,<br><br>   Plaintiff,<br> vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>   Defendant. | Case No. 09 C 05001<br><br>Magistrate Judge<br>P. Michael Mahoney |

## MEMORANDUM OPINION AND ORDER

**I. Introduction**

Gene Walker seeks judicial review of the Social Security Administration Commissioner's decision to deny his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. § 405(g). This matter is before the magistrate judge pursuant to the consent of both parties, filed on March 23, 2010. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

**II. Administrative Proceedings**

Claimant filed for DIB and SSI on or about February 22, 2006. (Tr. 130.) He alleged a disability onset date of January 27, 2006. (Tr. 130.) His claim was denied initially and on reconsideration. (Tr. 36, 37–34.) The Administrative Law Judge ("ALJ") convened a hearing on August 10, 2007, but the hearing was continued because of a significant discrepancy between two repeat forms from the same treating physician. (Tr. 10.) Claimant's counsel, James Black, was unable to reconcile the discrepancy and the ALJ found it imprudent to proceed without

1

further explanation. (Tr. 10.) The ALJ conducted a full hearing into Claimant's application for benefits on November 24, 2008. (Tr. 14.) At the hearing, Claimant was represented by counsel, James Black, and testified. (Tr. 14–45.) William Schweihs, a Vocational Expert (hereinafter referred to as "VE"), and Dr. James McKenna, a Medical Expert (hereinafter referred to as "ME") were also present and testified. (Tr. 14.) The ALJ issued a written decision denying Claimant's application on February 3, 2009, finding that Claimant was not disabled because there were jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 44.) Because the Appeals Council denied Claimant's Request for Review regarding the ALJ's decision, that decision constitutes the final decision of the Commissioner. (Tr. 1–5.)

### III. Background

Claimant was 41 years of age at the time of his hearing. (Tr. 31.) According to his testimony, Claimant lived with his parents, who were in their late sixties or early seventies and retired. (Tr. 17, 19.) Claimant also lived with his brother, who receives disability benefits. (Tr. 17.)

Claimant had not visited a doctor since 2007. (Tr. 17.) He had been taking Vicodin and Naproxen. (Tr. 17.) Claimant stopped taking these medications after 2007 because he could not afford them, and stated that he was taking ibuprofin at the time of his hearing. (Tr. 16–17.)

Claimant's family owned an automobile, but Claimant did not drive it due to the loss of his license. (Tr. 18.) He lost his license as a result of too many tickets, drag racing, and having an uninsured motor vehicle. (Tr. 18.) Claimant testified that he would do all of the work on his own car, but later explained that he had not done work on his car in the past few years. (Tr.

18–21.)  Claimant estimated that he lived approximately one-half mile from public transportation, but could not walk to the stops.  (Tr. 18.)

Claimant described pain that was isolated in his neck, but also stated that it was "all up and down." (Tr. 21.)  He could lift approximately five to ten pounds, and could sit for five to ten minutes before he had to move around because of pain.  (Tr. 21.)  Claimant wore a neck brace while laying down for four to six hours per day.  (Tr. 22.)  He would only leave his house once a week, and described a typical day as sitting or laying around the house.  (Tr. 22.)

The ME was questioned by the ALJ and Claimant's attorney, and testified to the following: He reviewed Claimant's electronic file and was present throughout the hearing to hear the testimony of Claimant.  (Tr. 23.)  He found the only objective medical evidence in the record to be cervical spine X-rays.  (Tr. 24.)  The X-rays showed mild degenerative changes predominantly in the C5-C6 area with some spurring, which the ME describe as "basically a kind of age-related change" for someone around Claimant's age.  (Tr. 24.)  There was also mention of mild narrowing of the lower cervical neuroforamen, though the ME noted that it usually takes a moderate degree of narrowing to raise a concern.  (Tr. 24–25.)  Mild narrowing was "really very, very borderline in terms of significance."  (Tr. 25.)  Claimant's file contained no other corroborative or other kinds of studies, other than Claimant's reports of pain.  (Tr. 25.) Referring to a Spinal Disorders form filled out by the treating physician, the ME noted that there was nothing about reflex loss, atrophy, or range of motion.  (Tr. 26.)  The ME described as "striking" the treating physician's finding of restriction of function in relation to the evidence that the treating physician attested to.  (Tr. 26.)  The ME found that there was no objective finding on which to based the significant restriction of function.  (Tr. 28.)  Claimant had no other

3

impairments and did not meet or equal a listing. (Tr. 28.)

The ME reviewed the State Agency physician's opinion that Claimant was limited to lifting no more than 50 pounds occasionally and standing and walking up to six hours in an eight-hour day. (Tr. 29.) He opined that there was a lack of an objective basis, but that the State Agency was likely giving Claimant credit for being a chronic pain claim, and therefore reduced his functional capacity from a heavy to a medium level. (Tr. 29.) The ME was hesitant to consider Claimant's case to be a "fully-fledged chronic pain claim," but thought that the medium residual functional capacity ("RFC") was a reasonable choice. (Tr. 29.)

The VE then testified as to Claimant's ability to work. (Tr. 31.) The ALJ did not ask the VE about Claimant's past work because the ALJ did not find that any of Claimant's past work rose to the level of substantial gainful activity. (Tr. 31.) The ALJ presented the VE with the following hypothetical:

> I want you to assume that we have an individual who's presently 41 years of age, 11 years of formal education, some SGA work on and off over the last 15 years, no past relevant work, with a history of neck problems with evidence of mild degenerative changes at C5-C6 of the cervical spine, and mild narrowing of C5 and C6. ... Who does not have any herniated cervical spine disc; who does not have compression of the central cord; who does not have any discreet nerve root lesions; who has no apathy (sic) or sensory loss or reflex loss, and no range of motion loss, but does have complaints of chronic pain for which he has taken prescription medications in the past; who is presently taking ibuprofin; who has not seen a treating source for a substantial period of time due to loss of income and insurance. I want you to further assume that this individual does not have an impairment that meets or equals a listing, and he retains the ability to lift the maximum of 50 pounds occasionally and 25 pounds frequently; can stand and walk up to six hours out of an eight-hour day, and sit for six hours out of an eight-hour day, and has no other exertional an [sic] non-exertional limitations. Please classify the range of work that is available for such an individual.

(Tr. 32.) The VE stated that a full range of unskilled medium level work would be available for such an individual. (Tr. 32.) The ALJ then presented a second set of hypothetical facts to the VE:

> Assume an individual who can lift and carry 20 pounds maximum occasionally and 10 pounds frequently, and stand and walk about six hours out of an eight-hour day, and sit for about six hours out of an eight-hour day; who from time-to-time during an eight-hour workday would need to lie down at will.

(Tr. 32.) The VE opined that such a person would not be capable of performing regular competitive work in the national economy. (Tr. 32–33.)

Claimant's counsel presented a third hypothetical to the VE, by asking the VE to change the above hypothetical to assume an individual with capacity to:

> lift less than ten pounds maximum, to stand and walk a minimum of five to ten minutes, to sit or stand a maximum of five to eight minutes ... and must lie down to relieve pain at times.

(Tr. 33.) The VE testified that such a person would not be capable of full-time work in the national economy.

### IV. Medical Evidence

The evidence in Claimant's medical record dates back to a March 3, 2004 visit with Dr. Theodore Ford, M.D., where Claimant presented with pain at the base of his neck and upper back. (Tr. 248.) Claimant reported that he may have slept wrong, and that the pain had been occurring for about a week. (Tr. 248.) Dr. Ford assessed Claimant as having degenerative disc disease, spondylosis, and discogenic disease. (Tr. 248.)

On March 4, 2004 Claimant had an X-ray taken on his cervical spine. (Tr. 233.) Dr. Alan S. Wagner, M.D., evaluated the X-ray as indicating mild degenerative changes

predominantly at C5-C6 with spurring and mild narrowing of the lower cervical neuroforamen. (Tr. 233.) No evidence of fracture or subluxation was reported. (Tr. 233.) Claimant followed up with Dr. Ford on March 10, 2004 and reported that his neck was 60 to 70 percent improved. (Tr. 246.) Dr. Ford prescribed Vioxx and Vicodin. (Tr. 246.)

The records indicate that Claimant next saw Dr. Ford on January 30, 2006. (Tr. 245.) Claimant again presented with neck pain which he described as being between a three and an eight on a scale of one-to-ten. (Tr. 245.) Claimant reported that his condition was no better than it was at his last appointment, but Dr. Ford's notes indicate that there was no radiating pain. (Tr. 245.) The notes from the visit also indicate that Claimant was given or was taking ibuprofin, and that he was working part-time making pizzas and for a moving company. (Tr. 245.) Claimant saw Dr. Ford again on March 28, 2006, when he continued to complain of neck pain. (Tr. 244.) He categorized the pain as ranging from a four to a five on a scale of one-to-ten. (Tr. 244.)

On April 20, 2006, Dr. Ramchandani performed a consultative examination of Claimant for the State Agency. (Tr. 190.) Dr. Ramchandani indicated that Claimant described a stiffness in his neck that was worse in the morning and with twisting, turning, looking up movements, pushing, pulling, reaching, and lifting five to ten pounds. (Tr. 190.) Claimant stated that his neck would get stiff when sitting still for ten minutes. (Tr. 190.) There are no noted abnormalities other than a report that Claimant had reduced sensation below the elbows not corresponding to any particular dermatone. (Tr. 191.) Claimant had full range of motion in all areas except the cervical spine and the lumbar spine. (Tr. 194.) With the cervical spine, claimant's range of motion was reduced by 15 degrees in the lateral flexion, 10 degrees in the flexion, 30 degrees in the extension, and 40 degrees in rotation to the left and right. (Tr. 194.)

Claimant's range of motion was reduced by 20 degrees in the flexion-extension of the lumbar spine. (Tr. 194.) Dr. Ramchandani's impression was that Claimant had cervical arthralgia secondary to spondylosis. (Tr. 192.)

Dr. Andrews, a State Agency physician, filled out a physical residual functional capacity assessment form on April 27, 2006. (Tr. 195–202.) The physical RFC indicated that Claimant retained the capability to: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; push and/or pull; climb ramps and stairs frequently; climb ladders, ropes, or scaffolds occasionally; and frequently balance, stoop, kneel, crouch, or crawl. (Tr. 196–97.) Dr. Andrews indicated that Claimant had no manipulative, visual, communicative, or environmental limitations. (198–99.) Dr. E.W. Donelan, another State Agency physician, reviewed Claimant's file and affirmed the findings of Dr. Andrews on June 29, 2006. (Tr. 222.)

Notes from visits to Dr. Ford's office on June 6, 2006 and August 3, 2006 indicate that Claimant was in to have SSI disability forms filled out. (Tr. 242–43.) The additional treatment notes from the June visit are difficult to discern, and the notes from the August visit contain nothing beyond the note about SSI forms. (Tr. 242–43.) Claimant's counsel explained to the ALJ that on one occasion, Dr. Ford's nurse only partially filled out the SSI Spinal Disorders form, and Dr. Ford later completed the entire form. (Tr. 15.) The fully completed form, dated June 15, 2006, indicates that Claimant experienced pain without numbness or loss of sensation; that there was no evidence of nerve root compression or atrophy; that Claimant had normal range of motion of the spine and normal ambulation. (Tr. 235.) Dr. Ford also indicated on the form that Claimant could stand for five to ten minutes maximum; was unable to use the unoccupied

7

upper extremity for normal lifting/carrying, for example, ten pounds; and could sit or stand at a stretch for five to eight minutes without having to change positions. (Tr. 236.)

On August 29, 2006, Claimant presented to Dr. Ford's office with back pain that had lasted for five days. (Tr. 241.) The appointment notes appear to state that Claimant was riding his bike when he felt a sudden pain. (Tr. 241.) Claimant was prescribed Torodol[1], Naproxyn[2], and Flexoril[3]. (Tr. 241.) At a September 15, 2006 visit at Dr. Ford's office, notes indicate that Claimant's spondylosis was significantly improved and Claimant's back strain was much improved. (Tr. 240.) Claimant visited Dr. Ford's office again later in September and on December 8, 2006 for check-ups. (Tr. 238–39.) Claimant described his pain level as a three and a two, respectively, on a scale of one-to-ten, and the treatment notes for both visits indicate that Claimant was asymptomatic for both spondylosis and back strain. (Tr. 238–39.)

On July 31, 2007, Claimant saw Dr. Ford complaining of lower back pain. (Tr. 237.) Claimant described back pain that had improved, but that at one point had been an eight or nine on a scale of one-to-ten. (Tr. 237.) An X-ray taken on the same date showed no fracture, spondylolysis, or spondylolisthesis, and minimal disc space narrowing and ventral spurring at L3-L4. (Tr. 249.) Dr. Ford's assessment contains a note about spasms, and Claimant was

---

[1]Toradol, also called by the generic name Ketorolac, is a non-steroidal anti-inflammatory drug used to relieve moderate to severe pain. PubMed Health, Ketorolac, *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000918/ (last reviewed Apr. 27, 2011).

[2]Naproxen is a non-steroidal anti-inflammatory drug used to relieve pain, tenderness, swelling, and stiffness, often times caused by arthritis. PubMed Health, Ketorolac, *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000526/ (last reviewed Apr. 27, 2011).

[3]Flexoril, also known as Cyclobenzaprine, is a muscle relaxant used with rest, physical therapy, and other measures to relax muscles and relieve pain caused by strains, sprains, and other muscle injuries. PubMed Health, Ketorolac, *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000699/ (last reviewed Apr. 27, 2011).

prescribed Torodol and Cyclobenzaprine (Flexoril). (Tr. 237.)

## V. Standard of Review

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). The ALJ's legal conclusions are reviewed de novo. *Binion v. Charter,* 108 F.3d 780, 782 (7th Cir. 1997). However, the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the [ALJ]." *Id*. The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case are entrusted to the Commissioner. *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the Commissioner.").

If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). "Substantial evidence" is "evidence which a reasonable mind would accept as adequate to support a conclusion." *Binion*, 108 F.3d at 782. If the ALJ identifies supporting evidence in the record and builds a "logical bridge" from that evidence to the conclusion, the ALJ's findings are supported by substantial evidence. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). However, if the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## VI. Framework for Decision

"Disabled" is defined as the inability "to engage in any substantial gainful activity by

9

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether any other work exists in significant numbers in the national economy which accommodates the claimant's residual functional capacity and vocational factors. The court will analyze each of these factors to determine whether the Commissioner's decision was supported by substantial evidence.

## VII. Analysis

### A. Step One: Is the Claimant Currently Engaged in Substantial Gainful Activity

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he or she is found not disabled, regardless of medical condition, age, education,

or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

In this case, the ALJ found that Claimant "has not engaged in substantial gainful activity since February 22, 2006, the application date." (Tr. 42.) Neither party disputes this determination. As such, the ALJ's Step One determination is affirmed.

### B. Step Two: Does the Claimant Suffer From a Severe Impairment

Step Two requires a determination whether the claimant is suffering from a severe impairment. A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers a severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Two, the ALJ found that Claimant has the following severe impairment: cervical spinal disc disease. (Tr. 42.) The substantial evidence in the record supports this conclusion, and the parties do not dispute this determination. Therefore, the ALJ's Step Two determination is affirmed.

### C. Step Three: Does Claimant's Impairment Meet or Medically Equal an Impairment in the Commissioner's Listing of Impairments

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. pt. 404, subpt. P, app. 1. The listings describe, for each of the body's major systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. § 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to a

listed impairment, then the claimant is found to be disabled and the inquiry ends; if not, the inquiry moves on to Step Four.

In performing the Step Three analysis in this case, the ALJ determined that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ relied on the testimony of the ME at the hearing that Claimant's medical record does not show disc herniation, nerve root compression, atrophy, or sensory or reflex loss as described in Section 1.04A of Appendix 1. (Tr. 42.) The ALJ also found that Claimant does not manifest the significant degree of ambulatory or fine and/or gross manipulative dysfunction required under section 1.00B.2 of Appendix 1. (Tr. 42.) The ALJ's determination is supported by substantial evidence in the record, and neither party challenges this finding. The court affirms the ALJ's Step Three determination.

### D. Step Four: Is the Claimant Capable of Performing Work Which the Claimant Performed in the Past

At Step Four, the Commissioner determines whether the claimant's residual functional capacity ("RFC") allows the claimant to return to past relevant work. Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1565(a); Soc. Sec. Rul. 82-62. If the claimant's RFC allows him to return to past relevant work, the claimant will not be found disabled; if the claimant is not able to return to past relevant work, the inquiry proceeds to Step Five.

Traditionally, the ALJ determines the claimant's RFC before making a Step Four determination. Here, the ALJ made a finding that Claimant has no past relevant work. This is

supported by evidence in the record, and is not disputed by the parties. Therefore, the court affirms the ALJ's Step Four decision and will review the ALJ's RFC determination at Step Five.

E.  **Step Five: Does Any Other Work Exist in Significant Numbers in the National Economy Which Accommodates the Claimant's Residual Functional Capacity and Vocational Factors**

At step five, the Commissioner determines whether the claimant's RFC and vocational factors allow the claimant to perform any job which exists in the national economy in significant numbers. 20 C.F.R. § 404.1560(c). The burden is on the Commissioner to provide evidence demonstrating other work exists. 20 C.F.R. § 404.1560(c)(2). In doing so, the Commissioner considers the Claimant's RFC and vocational factors in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 (the "Guidelines").

Residual functional capacity is a measure of the abilities which the claimant retains despite his or her impairment. 20 C.F.R. § 404.1545(a). The RFC assessment is based upon all of the relevant evidence, including objective medical evidence, treatment, physicians' opinions and observations, and the claimant's own statements about his limitations. *Id.* Although medical opinions bear strongly upon the determination of RFC, they are not conclusive; the determination is left to the Commissioner who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *see Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

When assessing the credibility of a claimant's statements about his or her symptoms, including pain, the ALJ should consider the following in addition to the objective medical evidence: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the

13

symptoms; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p; *see* 20 C.F.R. § 404.1529(c).

The Guidelines direct a conclusion of "disabled" or "not disabled" upon a finding of a specific vocational profile. Soc. Sec. Rul. 83-11. The Guidelines represent exertional maximums, and if the Claimant cannot perform substantially all of the exertional demands contemplated by the Guidelines and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or exertional limitations. Soc. Sec. Rul. 83-12; 83-14.

The ALJ determined that Claimant had the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c). The ALJ stated that he considered all of Claimant's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 42.) The ALJ went through the two-step analysis to consider whether Claimant's medical impairments could reasonably be expected to produce the alleged symptoms, and if so, the extent to which the intensity, persistence, and limiting effects of Claimant's symptoms limit Claimant's ability to do basic work activities. (Tr. 43.) Where statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by medical

14

evidence, a finding is made on the credibility of the statements based on a consideration of the entire case record.

The ALJ found that Claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC assessment. (Tr. 43.) The ALJ's discussion of Claimant's record reveals a detailed consideration of a number of factors from Claimant's testimony and medical record.

The ALJ noted that Claimant had seen Dr. Ford for back and neck pain going back to 2004. The ALJ acknowledged the cervical spinal X-rays showing mild degenerative changes with spurring and mild narrowing of the neuroforamen in 2004. A consultative examination in 2006 noted that Claimant's range of motion was "somewhat limited" in the cervical and lumbar spine and that sensation was diminished in the forearms below the elbows. (Tr. 43.) These notations on the evidence in the medical record support the ALJ's finding that Claimant's impairment could reasonably be expected to produce the alleged symptoms.

However, the ALJ also considered Dr. McKenna's testimony that the objective evidence of record did not substantiate the significant degree of limitation listed by Dr. Ford, nor did it provide a basis for Claimant's subjective complaints. (Tr. 43.) The ALJ proceeded to examine the evidence in the record to make a finding on the credibility of Claimant's statements about the extent of the limiting effects of his impairment.

An ALJ's credibility determination is to receive considerable deference and should not be overturned unless it is patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). In

15

support of his credibility determination, the ALJ described how Claimant testified that he had stopped looking for work because he had no way to get around. (Tr. 17, 44.) The ALJ noted that Claimant described losing his driver's license for "[t]oo many tickets, drag racing, uninsured motor vehicle" in November of 2007, and stated that he did the work on his own car, but later testified that he did the drag racing back in the 1980's. Claimant also clarified upon further questioning that he only did maintenance on his car when he was younger, and in more recent years put the car in a garage. (Tr. 20–21, 44.) The ALJ characterized this testimony as unresolved, and made note of the contradiction between Claimant's listing of drag racing as one of the reasons he lost his license in 2007 and his testimony that he hadn't drag raced since the 1980's. The ALJ also noted that Claimant did not have money to pay an outside mechanic and had unpaid tickets in 2007. (Tr. 44.) The court finds the ALJ's descriptions of Claimant's testimony to be accurate and relevant to the reasons why Claimant stated he was unable to work. Therefore, the court, in deferring to the ALJ's judgment as to Claimant's credibility, does not view the ALJ's finding to be patently wrong.

The ALJ considered substantial evidence in Claimant's medical record to come to the finding that the limitations listed by Dr. Ford on the Spinal Disorders form, and Claimant's subjective descriptions of pain and limitations, are not supported. The same evidence supports the ALJ's RFC finding. The ALJ alluded to Dr. Ford's treatment notes as being inconsistent with his own description of Claimant's limitations, and concurred with the ME that Claimant's medical record "shows nothing other than mild degenerative changes with some spurring in the cervical spine and mild lumbar spondylosis." (Tr. 44.)

The above findings from the ALJ's discussion of Claimant's record are supported by the

16

following evidence from Claimant's medical record:

- Dr. Ford indicated on the Spinal Disorders form that there was no evidence of nerve root compression or atrophy and that Claimant had normal range of motion of the spine and normal ambulation. (Tr. 235.)

- At an appointment with Dr. Ford in August, 2006, Claimant described a lower back pain that came about while riding a bike, and the only note about spondylosis relates to Claimant being in for "SSI" reasons.

- Over the course of three visits with Dr. Ford in September and December of 2006, Claimant's condition was listed as "significantly improved" and "asymptomatic," with the latter two appointments noting subjective pain ratings of three and two on a scale of one-to-ten.

- At a doctor's visit in July 2007 Claimant complained of lower back pain that had improved by the time of the appointment. An X-ray taken on the same date showed no fracture, spondylolysis, or spondylolisthesis, and minimal disc space narrowing and ventral spurring at L3-L4. (Tr. 249.)

- A March 4, 2004 X-ray of Claimant's cervical spine indicated mild degenerative changes predominantly at C5-C6 with spurring and mild narrowing of the lower cervical neuroforamen. (Tr. 233.) No evidence of fracture or subluxation was reported. (Tr. 233.) The ME categorized the findings as indicative of an "age-related change" and "borderline in terms of significance."

- Dr. Andrews, a state consultative physician, indicated that Claimant retained the capability to occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; push and/or pull; climb ramps and stairs frequently; climb ladders, ropes, or scaffolds occasionally; and frequently balance, stoop, kneel, crouch, or crawl. (Tr. 196–97.) This was concurred with by another state agency physician, and by the testifying medical expert. All three opinions contradict that of Dr. Ford.

The ALJ combined his credibility determination with his findings as to the substantial evidence in the medical record to arrive at his RFC finding. The ALJ provided a sufficient analysis such that he built a "logical bridge" between the evidence in the record and his conclusion. Based on its review of the medical record as a whole, and in light of the above evidence, the court is not persuaded to disturb the ALJ's RFC finding that Claimant is capable of

17

performing a full range of medium work.

Where there are no non-exertional limitations alleged, Rule 203.25 of the Medical-Vocational Guidelines directs a finding of "not disabled" for someone with an RFC for the full range of medium work of age, education, and work experience. 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ found Claimant to have an RFC for the full range of medium work, and the record supports a finding that Claimant was a younger individual with a limited education and previous work experience in the unskilled category. Therefore, the court affirms the ALJ Step Five finding.

### VIII. Conclusion

For the forgoing reasons, the Commissioner's motion for summary judgment is granted and Claimant's motion for summary judgment is denied.

**E N T E R:**

_____
**P. MICHAEL MAHONEY, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

**DATE**: May 12, 2011